IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 24-cv-02233-LTB

B.F.S.,

        Plaintiff,

v.

FRANK J. BISIGNANO, Commissioner of the Social Security Administration[1],

        Defendant.

## ORDER

Plaintiff, B.F.S., appeals from the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. § 401, *et. seq.* Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE and REMAND the SSA Commissioner's final decision for further consideration as follows.

## I. STATEMENT OF THE CASE

Plaintiff filed her DIB application on August 26, 2021, alleging disability as

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

of February 25, 2021. ECF No. 12-5 at 191-94.[2] After an evidentiary hearing on June 22, 2023, ECF No. 12-2 at 51-95, an Administrative Law Judge ("ALJ") denied Plaintiff's DIB application via an order dated November 1, 2023. ECF No. 12-2 at 28-45. The Appeals Council subsequently denied review, and this order became the SSA Commissioner's final decision. ECF No. 12-2 at 1-7. Plaintiff thereafter timely filed her complaint with this Court seeking judicial review of the Commissioner's final decision. ECF No. 1.

## II. ALJ's DECISION

When making her decision, the ALJ applied the five-step sequential process outlined in 20 C.F.R. § 404.1520(a). ECF No. 12-2 at 29-45. In so doing, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work, as defined in 20 C.F.R. § 404.1567(b), except that she could frequently perform postural limitations, handle, and finger bilaterally, and she could tolerate frequent exposure to extreme cold and work involving excessive vibration. ECF No. 12-2 at 34. Based on Plaintiff's assessed RFC, the ALJ found she was capable of performing her past relevant work (as a receptionist and as a front office manager) as such jobs did not require the performance of work-related activities precluded by her RFC pursuant to 20 C.F.R. § 404.1565. ECF No. 12-2 at 44. As a result, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, at step four of the sequential

---

[2] The Administrative Record in this case is filed at Docket No. 12 of the Case Management/ Electronic Case Files ("ECF") system. When citing to the administrative record I refer to the page number found in the bottom right-hand corner of the page. For all other pleadings, I cite to the document and page number generated by the ECF system.

process. ECF No. 12-2 at 44-45.

### III. STANDARD OF REVIEW

When deciding Social Security appeals, this Court reviews the ALJ's decision to determine whether the factual findings were supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Levan v. Berryhill*, No. 18-CV-02340-NRN, 2019 WL 2336852 (D. Colo. 2019) (unpublished) (citing *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007)).; *see also Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Kidd v. Comm'r, SSA*, No. 21-1363, 2022 WL 3041097 at *2 (10th Cir. Aug. 2, 2022) (unpublished) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). And "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue, supra*, 489 F.3d at 1084 (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

In addition, "[t]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Kidd v. Comm'r, supra*, 2022 WL 3041097, at *2

(quoting *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014)). Therefore, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

In summary, reviewing courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax v. Astrue, supra*, 489 F.3d at 1084.

## IV. ANALYSIS

Plaintiff raises four claims of error on appeal. She first contends that the ALJ erred in assessing her RFC when she failed to include a limitation addressing Plaintiff's need for bathroom breaks necessitated by her Crohn's disease symptoms. Plaintiff also asserts that the ALJ failed to consider her mental limitations when assessing her RFC. Plaintiff next maintains that there was insufficient evidence to support the ALJ's evaluation of her subjective symptoms. Finally, Plaintiff asserts error in the ALJ's evaluation of the opinion evidence in the record. Because I find that the ALJ erred when assessing Plaintiff's gastrointestinal symptoms related to her Crohn's disease and in failing to include or reject an RFC accommodation for bathroom access and/or breaks at work, I reverse the ALJ's decision and remand for further consideration. As such, I do not reach Plaintiff's remaining claims of error.

### A. The ALJ's RFC Evaluation Regarding Bathroom Breaks

Plaintiff first asserts that the ALJ erred when evaluating the symptoms of her longstanding Crohn's disease and, as a result, in failing to include that she

would need bathroom access and/or breaks when assessing her RFC. ECF No. 15 at 9-12. The Commissioner argues, in response, that the ALJ's determination that Plaintiff did not need greater workplace restrictions than those assessed by her RFC was supported by substantial evidence. ECF No. 16 at 7-11.

An assessed RFC is a multidimensional description of the work-related abilities a claimant retains despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). The RFC gauges "what the claimant is still functionally capable of doing on a regular and continuing basis, despite his [or her] impairments." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). It "does not represent the least an individual can do despite his or her limitations or restrictions, but the most." SSR 96-8p, 1996 WL 374184 (1996).

Here, the ALJ found that Plaintiff had the RFC to perform:

the full exertional range of light work, as defined in 20 C.F.R. § 404.1567(b), including the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, subject to the following limitations: she can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs; and occasionally climb ladders, ropes, and scaffolds and work at unprotected heights. She can frequently handle and finger bilaterally. She can tolerate frequent exposure to work in extreme cold, and to work involving excessive vibration. ECF No. 12-2 at 34.

As relevant here, the ALJ did not include an RFC requirement that Plaintiff would need any work accommodations to address the urgency, frequency or duration of her bathroom breaks as a result of her diarrhea due to her longstanding and active Crohn's disease. Plaintiff contends that this omission was error in that the medical evidence reveals that she suffered from Crohn's disease and experienced related

gastrointestinal symptoms, including chronic diarrhea. As such, she argues that the ALJ's failure to include an RFC accommodation for additional or unscheduled bathroom breaks constituted reversible error.

In her order, the ALJ first noted that:

> [Plaintiff] has a history of Crohn's disease and associated enteropathic arthritis. Concerning [Plaintiff's] Crohn's disease and associated enteropathic arthritis, [Plaintiff] reported symptoms including 15-20 bowel movements a day, cramping, stress fractures in feet, stiffness in neck, anal bleeding, abdominal pain, gas, incontinence, joint pain and numbness in hands. Despite these allegations, physical examination findings showed [Plaintiff] exhibited no synovitis or dactylitis, nontender abdomen, no extremity pain and no hepatosplenomegaly. However, examining providers noted occasions where [Plaintiff] exhibited diarrhea, pain throughout the spine with palpation over sacroiliac joints, mildly tender abdomen, joint pain, abdominal pain, multiple bowel movements a day, bloating and reduced motor strength in hands. ECF No. 12-2 at 35 (citations to the record omitted).

When reviewing the medical records related to Plaintiff's Crohn's disease, the ALJ primarily assessed the physical effects of Plaintiff's enteropathic arthritis, and found a lack of clinical findings to support her claims of "extreme limitations in her exertional capacities and stamina." ECF No. 12-2 at 37. As to Plaintiff's gastrointestinal symptoms, the ALJ found that:

> From the overall record, [Plaintiff's] Crohn's has responded well to treatment. [Plaintiff] underwent a bowel resection in 1994, 1999 and May 2022. She had CT scan on March 17, 2022, which noted severe inflammatory process immediately proximal to the small bowel color [sic?], anastomosis. She had a colonoscopy on April 1, 2022, which found a stricture at the ileal surgical anastomosis, and a stricture in the distal rectum. These were dilated, and localized severe inflammation was found in the rectum secondary to Crohn's disease. The examination was otherwise normal. No specimens were collected.
>
> Given those findings, [Plaintiff] saw Dr. Herman Peters on April 19, 2022,

> to discuss surgery. Again, the last surgery had occurred in 1999. He recommended revision of the ileocolic anastomosis, with Dr. Peters noting that given the lack of severity of disease on her recent colonoscopy, he thought this was a reasonable option. Good findings were noted on exam then. She returned to Dr. Peters for preop on May 17, 2022, with stable findings on exam. She had the surgery two days later, on May 19, 2022. At follow up on June 2, 2022, it was noted that, she did well postoperatively without complication.
>
> At that June 2, 2022 follow up visit, she did report having diarrhea still, more nocturnal now since the surgery. On exam, she had good findings, with inspection of the abdomen overall normal, as it was soft, with no rebound tenderness, and no rigidity, and no hepatosplenomegaly. She had tenderness at the epigastrium and in the right lower quadrant. Her bowel sounds were normal, and her surgical site intact, with no palpable hernia.
>
> A CT scan of [Plaintiff's] abdomen on July 22, 2022, noted status post left hemicolectomy without acute abnormalities. [Plaintiff] was prescribed medication, including prednisone, Stelara, trazodone, Humira, Entyvio and Pantoprazole, to treat her symptoms. [Plaintiff's] Crohn's disease is well managed with Stelara. As probative, medical records state that [Plaintiff's] Crohn's used to flare often but now [Plaintiff] only experiences flares 1-2 times a month. The following year, she underwent an April 7, 2023, colonoscopy, the results of which revealed normal ileum, stricture in the rectum and moderate inflammation from the anus to the rectum.
>
> Overall, while she has the Crohn's, it is longstanding, and overall stable. While she had surgery for a stricture in May 2022, it met with good result. While a year later, she has a stricture in rectum, she otherwise has stable findings. It is just being monitored. ECF No. 12-2 at 38 (citations to the record omitted).

The ALJ further noted that:

> From the record, she reported dropping 50 pounds on her foot on November 29, 2022. When asked the circumstances of this event at the hearing, she testified that, she dropped her suitcase on her foot, when trying to empty it after a trip. She, her mom, and her brother went on a cruise for a week over the Thanksgiving holiday, traveling to the eastern Caribbean. Her ability to engage in such travel, including traveling to the airport, flying to Florida, where they departed on the cruise and then returned, as well as being on the ship, eating cruise food, with no noted issues is not supportive of her allegations. ECF No.

12-2 at 38-39 (citations to the record omitted).

The ALJ then assessed Plaintiff's RFC based on her "infrequent Crohn's flares and related arthritis symptoms," and noted that her "Crohn's disease is well managed with Sterala." ECF No. 12-2 at 39, 43. The ALJ did not include in Plaintiff's RFC any limitations or requirements for bathroom breaks or accessibility. In summary, the ALJ indicated that:

> In reaching these conclusions, the undersigned has considered all of [Plaintiff's] statements concerning her limitations, but cannot find her complaints are well supported by the overall evidence of record. [Plaintiff] has reported that, she has been unable to work full-time, yet the objective evidence, clinical findings, good result with ileocolic anastomosis revision, conservative, actual treatment, and fairly active and social lifestyle prevent the imposition of more rigorous restrictions. ECF No. 12-2 at 44.

Plaintiff argues that the ALJ erred in that the evidence of her diarrhea related to her Crohn's disease was sufficient for the inclusion of some requirement for additional or unscheduled breaks and/or access to a bathroom in her RFC.

I first note that the ALJ did not specifically address the issue of Plaintiff's Crohn's disease-related diarrhea, or her potential need for bathroom breaks while at work. And there appears to be no direct evidence in the record of the Plaintiff's need for unscheduled or additional breaks or access to a bathroom when working due to her diarrhea. However, Plaintiff testified that after years of treatment with drugs and numerous surgeries, she still suffers from "Crohn's flares." ECF No. 12-2 at 61. And, in response to the ALJ's question about how often she experienced a Crohn's "flare," Plaintiff responded she always was having some Crohn's activity or

some type of flare, and episodes of "debilitating discomfort" once every 4 to 6 weeks, lasting several days. ECF No. 12-2 at 82-84. In addition, the medical records are clear that prior to her bowel resection surgery on May 19, 2022, Plaintiff suffered from "out of control" chronic diarrhea and reported 10-15 persistent loose bowel movements per day. ECF No. 12-7 at 387, 430, 476-79, 548, 553-555.

Although the medical records indicate she reported regular bowel movements post-surgery, ECF No. 12-7 at 491, the records thereafter reveal that her gastrointestinal symptoms persisted in that she reported, during an office visit on July 6, 2022, that she was "having diarrhea still, more nocturnal now since surgery. She has 3-4 episodes of liquid diarrhea usually every night. She had 2 episodes of bloody stool one week ago," and complained of abdominal pain, bloody stool, change in bowel habits, chronic diarrhea, excessive gas, heartburn, hemorrhoids and nausea. ECF No. 12-7 at 548-50. In addition, during an examination at her gastroenterology clinic on February 1, 2023, it was noted that Plaintiff's "diarrhea seems to have always been out of control" and she reported that "[s]he has had some increasing abdominal pain the last few weeks. Her diarrhea has never really went [sic] away. It is somewhat more progressive recently after her last surgery." ECF No. 12-7 at 688-9. Her gastrointestinal symptoms were noted as abdominal pain, bloody stool, chronic diarrhea, excessive gas, heartburn and nausea. ECF No. 12-7 at 689.

In addition, a Physical Medical Source Statement dated March 7, 2023, completed by Plaintiff's primary care provider, Jamie Vollmerhausen, PA-C., opined

that Plaintiff would need unpredictable and unscheduled work breaks (outside of normal breaks every two hours) for her symptoms which included "GI symptoms." ECF No. 12-7 at 731. While there are other opinions in the medical record addressing Plaintiff's physical workplace limitations, including two consultive examinations, they do not address any potential workplace need for unpredictable breaks and/or access to a bathroom due to her Crohn's disease-related diarrhea. ECF No. 12-3 at 105-109, 119-21 (noting that Plaintiff suffered from Crohn's disease complicated by diarrhea); ECF No. 12-7 at 380-85, 430-34, 654-59, 771 (in which Plaintiff's rheumatologist opined that Plaintiff would need unscheduled five-minute breaks if she was suffering from a "flare" due to muscle weakness and pain).

I find that the medical evidence relied on by the ALJ was insufficient to support her unprecise finding that "more rigorous RFC restrictions were not required" in order to accommodate Plaintiff's gastrointestinal symptoms from her Crohn's disease. As noted above, the objective medical evidence indicated that after her May 2022 surgery she ultimately was still experiencing diarrhea and other gastrointestinal symptoms. A CT scan ordered to address her abdominal pain two month following her surgery reveal some normal findings but also indicated that "[i]leocolic anastomosis is seen within the central abdomen" and "[f]at infiltration of the colonic wall of the mid-distal sigmoid and rectum which has been described with chronic inflammation but is often incidental." ECF No. 12-7 at 545. To the extent the ALJ relies on Plaintiff's report that she "only experiences flares 1-2 times a month" in June of 2022, ECF No. 12-7 at 38, the notation in her rheumatologist's

records appears to refer to her past history with uveitis, which is a form of eye inflammation. ECF No. 12-7 at 501. An annual colonoscopy in April of 2023 revealed that her ileum and IC anastomosis looked disease free, "but the rectal Crohn's is moderately severe with recurrent stenosis" and Crohn's disease and "[i]nflammation was found from the anus to the rectum" that was "moderate in severity." ECF No. 12-7 at 774. And the only opinion evidence specifically addressing the issue was from her treating provider who opined, ten months after her surgery, that Plaintiff would need unpredictable and unscheduled work breaks for her symptoms which included "GI symptoms." ECF No. 12-7 at 731. Although Plaintiff did not provide testimony as to her need for bathroom access and breaks due to diarrhea, she testified that she was always having some Crohn's activity or some type of flare, and she experienced "debilitating discomfort" episodes once every 4 to 6 weeks, lasting several days. ECF No. 12-7 at 82-84.

The ALJ's reliance on reports that her Crohn's disease was overall "stable" and "well-controlled with Stelara," without further analysis or discussion, does not specifically or directly address her gastrointestinal symptoms, and my review of the references in the medical record does not disclose such connection. ECF No. 12-2 at 38, 39, 43. ECF No. 12-7 at 479, 484 (where the surgeon noted, prior to surgery in May 2022, that Plaintiff had "difficulty managing her Crohn's with medication," but she reported it was "currently fairly well controlled" with Stelara); *id.* at 750 (in which Plaintiff's rheumatologist indicated, in September of 2022, that Plaintiff reported at their initial visit that her GI symptoms were "stable"). I agree with

Plaintiff that a record notation of stability in this context, and under the circumstances here in which the notes did not provide any elaboration, does not necessarily relate to a finding that her diarrhea was controlled or did not require accommodation. *See generally Milatz v. Kijakazi*, No. CIV-20-1219-STE, 2022 WL 675819, at *9 (W.D. Okla. Mar. 7, 2022) (unpublished) (remanding based, in part, on the ALJ's finding that the claimant's Crohn's disease "was noted to be without complication and stable"). Likewise, the ALJ's conclusion that her week-long cruise with her mother and brother in November of 2022 – including traveling to the airport, flying to Florida, where she departed on the cruise and then returned – "as well as being on the ship, eating cruise food, with no noted issues," ECF No. 12-2 at 39, does not necessarily support a determination that Plaintiff does not suffer from Crohn's disease-related diarrhea that would require RFC accommodations while at work.

The Commissioner argues that although Plaintiff reported she was suffering from diarrhea, "she did not consistently report any excessive urgency or frequency that would justify any workplace restrictions." ECF No. 16 at 9-10. But here the ALJ did not address or discuss the issue when determining that Plaintiff "did not need greater workplace restrictions" in formulating her RFC, and to the extent the ALJ was addressing Plaintiff's need for bathroom accommodations due to her Crohn's disease-related diarrhea, such finding was not supported by sufficient evidence. *See C.P. v. OMalley*, No. 23-CV-00278-NRN, 2024 WL 757087, at *5 (D. Colo. Feb. 23, 2024) (unpublished) (reversing on the basis that substantial evidence

in the medical record required additional RFC limitations to accommodate Plaintiff's bowel movements related to symptoms from her Crohn's disease, and ruling that "neither the ALJ nor the Commissioner explain[s] why normal abdominal examinations, colonoscopies with mild to moderate findings, or a medical finding of Crohn's disease 'without complication' would undercut Plaintiff's reported symptoms regarding the urgency, frequency, and duration of her bowel movements [as i]t is not obvious to the Court, nor is it explained in the record, why such medical evidence is somehow inconsistent with Plaintiff's reported bathroom usage."); see also T.E.P. v. Comm'r, Soc. Sec. Admin., No. 1:23-CV-02184-DDD, 2024 WL 6991091, at *4 (D. Colo. Oct. 1, 2024) (unpublished) (affirming an RFC providing that the claimant was only required to have "access to a restroom as needed" and "would be off task less than 10 percent of the workday in addition to normal breaks" when a repeat colonoscopy revealed improvement of the claimant's Crohn's disease, his bowel movements decreased to two or three daily on medication, no active disease was noted, and later records indicated that his "Crohn's disease continued to be well managed"); but see T.H. v. Comm'r, Soc. Sec. Admin., No. 1:24-CV-00572-RMR, 2025 WL 953665, at *7 (D. Colo. Mar. 17, 2025) (unpublished) (affirming the ALJ's finding that while the claimant's RFC included that she needed "three unexpected and additional restroom breaks, lasting for 15 minutes" after her Chron's disease became a severe impairment, such accommodation was not required before then because the ALJ provided specific reasons for the rejection of Plaintiff's reported symptoms, and more than a mere scintilla of evidence supported the ALJ's

findings).

I conclude, based on the foregoing, that the ALJ failed to adequately address or reject Plaintiff's need for bathroom access and/or breaks while at work when formulating her RFC. And to the extent the ALJ's finding that she did not need "greater workplace restrictions" meant that she did not need an accommodation for additional breaks due to her Crohn's disease-related diarrhea, such finding is not supported by sufficient evidence. As such, I remand this case to the ALJ for further findings including additional evidence if needed, and detailed conclusions addressing this potential RFC accommodation.

### B. Remaining Claims of Error

Because I am returning this case to the ALJ for further rulings, I do not reach Plaintiff's remaining claims on appeal. On remand I direct the ALJ to address Plaintiff's claims that 1) the ALJ failed to consider her mental limitations when assessing her RFC; 2) that there was insufficient evidence to support the ALJ's evaluation of her subjective symptoms; and 3) evaluation of the opinion evidence in the record was in error.

ACCORDINGLY, for the foregoing reasons, I REVERSE and REMAND the final decision of the SSA Commissioner denying Plaintiff's application for disability insurance benefits for further findings and conclusions.

Dated: February 26, 2026 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock

LEWIS T. BABCOCK, JUDGE